UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH EUGENE ATKINSON, CDCR #AI-6892,<br><br>Plaintiff,<br><br>vs.<br><br>B. NELSON, S. RODRIGUEZ, S. STEADMAN and M. SORMILLON,<br><br>Defendants. | Case No.: 23cv253-LL-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS,**<br><br>**(2) DENYING MOTION TO APPOINT COUNSEL, and**<br><br>**(3) SCREENING COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)** |

Plaintiff Joseph Eugene Atkinson is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 1. Plaintiff claims that while incarcerated at the R. J. Donovan Correctional Facility ("RJD") in San Diego, California, excessive force was used during a vindictive cell extraction and he was denied adequate medical care for his resultant injuries. *Id.* at 3-5. Plaintiff has also filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) and a Motion to Appoint Counsel. ECF Nos. 2-3.

23cv253-LL-AHG

## I.      Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to prepay the entire fee only if leave to proceed IFP is granted pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1) & (4). The institution collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2). Plaintiff remains obligated to pay the entire fee in monthly installments regardless of whether their action is ultimately dismissed. *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

In support of his IFP Motion, Plaintiff has submitted a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report which indicates that during the six months prior to filing suit Plaintiff had an average monthly balance of $392.05, average monthly deposits of $56.78, and an available balance of $152.88 in his account at the time he filed suit. ECF No. 2 at 4. Plaintiff's Motion to

---

[1] In addition to a $350 fee, civil litigants, other than those granted leave to proceed IFP, must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).

23cv253-LL-AHG

1  Proceed IFP is **GRANTED**. The Court assesses an initial partial filing fee of $78.41.

2  Plaintiff remains obligated to pay the remaining $271.59 in monthly installments even if

3  this action is ultimately dismissed. *Bruce*, 577 U.S. at 84; 28 U.S.C. § 1915(b)(1)&(2).

4  **II.      Screening pursuant to §§ 1915(e)(2) & 1915A(b)**

5        **A.      Standard of Review**

6        Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-

7  Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b), which require this

8  Court to sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is

9  frivolous, malicious, fails to state a claim, or seeks damages from defendants who are

10  immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing

11  28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010)

12  (discussing 28 U.S.C. § 1915A(b)).

13        "The standard for determining whether a plaintiff has failed to state a claim upon

14  which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of

15  Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d

16  1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir.

17  2012) (noting that § 1915A screening "incorporates the familiar standard applied in the

18  context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule

19  12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state

20  a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009),

21  quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Detailed factual

22  allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action,

23  supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

24  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-

25  specific task that requires the reviewing court to draw on its judicial experience and

26  common sense." *Id.*

27        Title 42 U.S.C. § 1983 "creates a private right of action against individuals who,

28  acting under color of state law, violate federal constitutional or statutory rights." *Devereaux*

*v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B.       Plaintiff's Allegations

In count one of the Complaint Plaintiff alleges Defendant RJD Correctional Officer Nelson was part of a team that, on the orders of Defendant RJD Sergeant Rodriguez, performed an unauthorized "controlled use of force" cell extraction without a registered nurse attending. ECF No. 1 at 3. Plaintiff states that when the correctional officers entered his cell he was taken to the ground in a few seconds following a brief struggle. *Id.* Once Plaintiff was on the ground and "clearly no longer resisting," Defendant Nelson "viciously" struck Plaintiff in the head and neck approximately eight times while the only movements Plaintiff made were to cover his face to protect himself. *Id.* He was handcuffed with his hands behind his back and placed in leg restraints, stood up, and "started walking as directed." *Id.* After walking fifteen or twenty feet, "Nelson begins to over-aggressively handle & pushing me. Then suddenly without provocation repeatedly strikes me with his fist at least 7 more times, then knees me in my lower back/rib area while I'm in full hand & leg restraints!" *Id.*

In count two Plaintiff alleges he was in administrative segregation for a non-disciplinary reason when the cell extraction took place, and that Defendant Rodriguez had acted as a mediator to diffuse a "dispute with one of the custody officers regarding my constant mistreatment while housed in administrative segregation." *Id.* at 4. Defendant Rodriguez approached Plaintiff's cell "in a hostile & standoffish manner" and "began to engage in a conversation with me from a argumentative standpoint." *Id.* The situation escalated due to Defendant Rodriguez's "inability to remain professional," and after ten

minutes Rodriguez told Plaintiff that "something was seriously wrong with me & that he was going to get someone from mental health for me to talk to." *Id.* Rodriguez returned about one minute later without anyone from mental health, continued to argue with Plaintiff, and after ten minutes "started making false accusations that I was unresponsive." *Id.* Plaintiff contends Rodriguez lied in his report "when he stated that I'd taken the trayslot hostage & was throwing things & was acting hostile," in order to "maliciously use medical as a excuse to enter my cell under false pretenses purely to be vindictive." *Id.*

In count three of the SAC Plaintiff alleges he was denied adequate medical care for the injuries he sustained during the cell extraction. *Id.* at 5. He was sent to an outside hospital for evaluation where he informed the doctor he had been struck in the head and neck about twelve times with fists and elbows and was experiencing excruciating pain in his lower back. *Id.* He was given pain medication and "a shot to relax my muscles." *Id.* When Plaintiff was discharged from the hospital two hours later he informed the nurse that the treatment was not working and was concerned something was wrong. *Id.* The nurse made a note in his file, but the doctor discharged him anyway. *Id.* A short time later Plaintiff was back in his cell when the pain became overwhelming. *Id.* RJD Nurse Picart and Defendant RJD Nurse Sormillon arrived, took his vital signs, and "then spoke with the on call doctor of the prison who then cleared me without examining me in person" on the basis that Plaintiff was fine having just come from the hospital. *Id.* Plaintiff "reiterated it's critical I be checked out again because I never received any x-rays or MRIs and that I'm in pain" and "something could seriously be wrong with me!" *Id.* Plaintiff states that: "My plea for medical treatment and further examination fell on deaf ears. Instead I was locked in a cage and left there for hours. When I finally saw a doctor 6 days later, it was discovered in fact something was wrong with me! I received a concussion, lost vision in both my eyes mostly in the right one, I suffer from migraines that last for hours and lower back pain and spasms." *Id.* Finally, Plaintiff alleges Defendant RJD Chief Deputy Warden Steadman, the only other named Defendant, "refused me a rightful transfer which led to me being assaulted by one of his officers." *Id.* at 2.

23cv253-LL-AHG

1   **C.      Analysis**

2         **1.      Claim One**

3      Plaintiff alleges in claim one that excessive and unnecessary force was used during

4  a cell extraction when Defendant Correctional Officer Nelson "viciously" struck him in the

5  head and neck approximately eight times while he was on the ground and not resisting, and

6  then while being escorting in full restraints Nelson struck him with his fist at least seven

7  more times without provocation and kneed him in the back and rib area. ECF No. 1 at 3.

8      The Cruel and Unusual Punishments Clause of the Eighth Amendment forbids

9  prison officials from "the unnecessary and wanton infliction of pain." *Whitley v. Albers*,

10  475 U.S. 312, 319 (1986). "[W]henever prison officials stand accused of using excessive

11  physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial

12  inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to

13  maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v.*

14  *McMillian*, 503 U.S. 1, 6-7 (1992).

15      The allegations supporting count one, that Defendant Nelson maliciously hit and

16  kicked Plaintiff without justification, are sufficient to survive the "low threshold" of the

17  screening required by 28 U.S.C. §§ 1915(e)(2) & 1915A(b) with respect to an Eighth

18  Amendment excessive use of force claim against Defendant Nelson. *See Wilhelm*, 680 F.3d

19  at 1123; *Iqbal*, 556 U.S. at 678; *McMillian*, 503 U.S. at 6-7. Plaintiff is entitled to have the

20  U.S. Marshal effect service of the summons and his Complaint on his behalf against

21  Defendant Nelson. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve

22  all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court

23  may order that service be made by a United States marshal or deputy marshal . . . if the

24  plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.") However,

25  Plaintiff is cautioned that the sua sponte screening process is "cumulative of, not a

26  substitute for, any subsequent [motion to dismiss] that the defendant may choose to bring."

27  *Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1119 (S.D. Cal. 2007).

28

6

23cv253-LL-AHG

1

### 2. Claim Two

Plaintiff alleges in claim two that the cell extraction was ordered by Defendant Sergeant Rodriguez "under false pretenses purely to be vindictive," and that Rodriguez "displayed negligence & blatant disregard for protocol & procedures when he gave orders to perform an unauthorized cell extraction." ECF No. 1 at 4. Plaintiff claims Rodriguez ordered the cell extraction after becoming angry and frustrated when Plaintiff challenged and undermined his authority during an argument "regarding my constant mistreatment while housed in administrative segregation," and that he justified the cell extraction with false accusations Plaintiff was disruptive and hostile. *Id.*

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (2005). The allegations in the Complaint that Defendant Rodriguez took an adverse action against Plaintiff by ordering a controlled use of force cell extraction based on false allegations of misconduct immediately after Plaintiff complained of mistreatment in administrative segregation are sufficient to survive the "low threshold" of the screening required by 28 U.S.C. §§ 1915(e)(2) & 1915A(b) with respect to a First Amendment retaliation claim against Defendant Rodriguez. *Id.* at 567 n.11 (where a plaintiff alleges actual harm, specific allegations of a chilling effect are not required); *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (evidence of retaliation includes "(1) evidence of proximity in time between the protected speech and the alleged retaliatory decision; (2) evidence that the defendant expressed opposition to the speech; or (3) evidence that the defendant's proffered reason for the adverse action was pretextual.") (internal citations omitted); *Watison*, 668 F.3d at 1115 (allegations of false disciplinary action are sufficient to allege absence of a legitimate correctional goal). The allegations are also sufficient to survive screening with respect to an Eighth Amendment claim against Defendant Rodriguez for having ordered a vindictive

1    controlled use of force cell extraction. *See McMillian*, 503 U.S. at 6-7 (an Eighth

2    Amendment violation may occur when "force was [not] applied in a good-faith effort to

3    maintain or restore discipline, [but] maliciously and sadistically to cause harm."). "A

4    defendant may be held liable as a supervisor under § 1983 if 'there exists either (1) his or

5    her personal involvement in the constitutional deprivation, or (2) a sufficient causal

6    connection between the supervisor's wrongful conduct and the constitutional violation.'"

7    *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011), quoting *Hansen v. Black*, 885 F.2d

8    642, 646 (9th Cir. 1989).

### 3.    Claim Three

10   Plaintiff alleges in claim three that he was denied his right to adequate medical care

11   when he complained of overwhelming pain shortly after he returned from the hospital but

12   was not seen by a doctor until six days later, at which time it was revealed he had a

13   concussion with loss of vision in both eyes and continuing back pain and migraines. ECF

14   No. 1 at 5. The Eighth Amendment's prohibition on the infliction of cruel and unusual

15   punishment "establish the government's obligation to provide medical care for those whom

16   it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 101-03 (1976). "[A]

17   prison official violates the Eighth Amendment only when two requirements are met. First,

18   the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*,

19   511 U.S. 825, 834 (1994), quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, "a

20   prison official must have a 'sufficiently culpable state of mind,'" that is, "one of 'deliberate

21   indifference' to inmate health or safety." *Id.,* quoting *Wilson*, 501 U.S. at 302-03.

22   Plaintiff's allegations of a serious medical need are sufficient to survive the

23   screening required by 28 U.S.C. §§ 1915(e)(2) & 1915A(b). *Watison*, 668 F.3d at 1112;

24   *Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 678; *Doty v. County of Lassen*, 37 F.3d 540,

25   546 n.3 (9th Cir. 1994) ("[I]ndicia of a 'serious' medical need include (1) the existence of

26   an injury that a reasonable doctor would find important and worthy of comment or

27   treatment, (2) the presence of a medical condition that significantly affects an individual's

28   daily activities, and (3) the existence of chronic or substantial pain.")

23cv253-LL-AHG

1    The deliberate indifference prong of an Eighth Amendment violation "is satisfied by

2    showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical

3    need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th

4    Cir. 2006). To plausibly allege deliberate indifference, "the prison official must not only

5    'be aware of the facts from which the inference could be drawn that a substantial risk of

6    serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*,

7    391 F.3d 1051, 1057 (9th Cir. 2004), quoting *Farmer*, 511 U.S. at 837. Allegations of

8    differences of opinion over proper medical care, inadequate medical treatment, medical

9    malpractice, or even gross negligence by themselves do not rise to the level of an Eighth

10   Amendment violation. *See Farmer*, 511 U.S. at 835 ("[N]egligen(ce) in diagnosing or

11   treating a medical condition" does not amount to deliberate indifference), quoting *Estelle*,

12   429 U.S. at 105-06 (holding that "an inadvertent failure to provide medical care,"

13   allegations that "a physician has been negligent in diagnosing or treating a medical

14   condition," or "medical malpractice" do not state an Eighth Amendment claim and

15   "[m]edical malpractice does not become a constitutional violation merely because the

16   victim is a prisoner.")

17       Plaintiff alleges that when Defendant Nurse Sormillon responded to his cell upon

18   his complaint of pain along with Nurse Picart, who is not named as a Defendant, "they took

19   my vitals, then spoke with the on call doctor of the prison who then cleared me without

20   examining me in person. Stating reason being that 'I'm fine is [sic] because I'd just come

21   from the hospital.'" ECF No. 1 at 5. Plaintiff "reiterated," apparently to the two Nurses,

22   that "it's critical I be checked out again because I never received x-rays or MRIs and I'm

23   in pain," but was not seen by a doctor until six days later. *Id.* Nurse Sormillon is the only

24   Defendant accused by Plaintiff of denying him medical care, but Plaintiff merely alleges

25   Sormillon took his vital signs and contacted a doctor on his behalf. Those allegations do

26   not plausibly allege Sormillon acted with a conscious disregard of Plaintiff's medical

27   condition because there are no allegations regarding what more Plaintiff contends

28   Sormillon should have or even could have done under the circumstances to provide better

or faster medical care. *See Toguchi*, 391 F.3d at 1058 (deliberate indifference shown where the chosen course of medical treatment was "medically unacceptable under the circumstances" and chosen "in conscious disregard of an excessive risk to the prisoner's health."); *Estelle*, 429 U.S. at 106 (holding that inadvertent failure to provide medical care, mere negligence or medical malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth Amendment claim); *Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence" and "more than ordinary lack of due care for the prisoner's interests or safety."); *Castro*, 833 F.3d at 1068 ("A prison official cannot be found liable under the [the Eighth Amendment] . . . 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'") (quoting *Farmer*, 511 U.S. at 837).

The Court sua sponte dismisses Plaintiff's Eighth Amendment denial of medical care claim against Defendant Sormillon based on a failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121. If Plaintiff wishes to proceed with an Eighth Amendment claim based on denial of medical care, he must set forth factual allegations which plausibly allege what acts or omissions a Defendant took or failed to take which amounted to a conscious disregard to his serious medical needs. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

### 4. Defendant Steadman

The only remaining Defendant named in the Complaint is RJD Chief Deputy Warden Steadman. ECF No. 1 at 2. The only allegations against this Defendant are that: "Every person confined or residing in facilities of the department are subject to the rules & regulations of the secretary & procedures established by the warden. He also refused me a rightful transfer which led to me being assaulted by one of his officers." *Id.*

Supervisory liability is not an independent cause of action under § 1983, and to state a claim against supervisory personnel Plaintiff must allege both an underlying

1   constitutional violation and a sufficient causal connection between the supervisor's actions

2   and the violation. *Starr,* 652 F.3d at 1207. "A person 'subjects' another to the deprivation

3   of a constitutional right, within the meaning of section 1983, if he does an affirmative act,

4   participates in another's affirmative acts, or omits to perform an act which he is legally

5   required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*,

6   588 F.2d 740, 743 (9th Cir. 1978).

7          There are no allegations in the Complaint that Defendant RJD Chief Deputy Warden

8   Steadman had knowledge Plaintiff was subjected to vindictively applied excessive force

9   during the cell extraction or was not receiving adequate medical care for his injuries as

10  alleged in the Complaint. The conclusory allegation that this Defendant is responsible for

11  everything that happened to Plaintiff at RJD because he refused an otherwise unspecified

12  transfer request, fails to plausibly describe individual acts or omissions by this Defendant

13  related to Plaintiff's cell extraction or medical treatment which resulted in the alleged

14  constitutional violations. *See Leer*, 844 F.2d at 633 ("The inquiry into causation must be

15  individualized and focus on the duties and responsibilities of each individual defendant

16  whose acts or omissions are alleged to have caused a constitutional deprivation."); *see also*

17  *Iqbal*, 556 U.S. at 678 (the pleading standard "demands more than an unadorned, the-

18  defendant-unlawfully-harmed-me accusation."), quoting *Twombly*, 550 U.S. at 555.

19         The Court sua sponte dismisses all claims in the Complaint against Defendant RJD

20  Chief Deputy Warden Steadman for failure to state a claim pursuant to 28 U.S.C.

21  §§ 1915(e)(2) & 1915A. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

22  **D.      Leave to Amend**

23         In light of Plaintiff's pro se status, the Court grants him leave to amend his pleading

24  to attempt to sufficiently allege a § 1983 claim against Defendants Sormillon and Steadman

25  if he can and if he wishes to attempt to do so. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039

26  (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to

27  amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured

28  by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

### E.     Plaintiff's Options

Because the Court has determined that Plaintiff's Eighth Amendment excessive use of force claim against Defendants Rodriguez and Nelson and his First Amendment retaliation claim against Defendant Rodriguez survive the sua sponte screening process but his remaining claims against the remaining Defendants do not, Plaintiff is given the opportunity to (1) notify the Court of his intent to proceed only with the First and Eighth Amendment claims in the Complaint against Defendants Rodriguez and Nelson; or (2) file a First Amended Complaint that attempts to correct any or all of the deficiencies of pleading identified in this Order. **Plaintiff must choose one of those options within forty-five (45) days from the date this Order is filed.** If Plaintiff notifies the Court he wishes to proceed only with his claims against Defendants Rodriguez and Nelson, the Court will issue an Order directing the Clerk to issue the summons as to those Defendants and direct the U.S. Marshal to effect service of the summons and Complaint on those Defendants, and all remaining claims and Defendants will remain dismissed from this action.

## III.    Motion to Appoint Counsel

Plaintiff seeks appointment of counsel on the basis that he has made repeated unsuccessful efforts to obtain counsel, is unable to afford counsel, his status as a prisoner limits his ability to litigate the complex issues in this case which will require significant research and investigation, and a trial will likely involve conflicting testimony. (ECF No. 3 at 1.) There is no constitutional right to counsel in a civil case, and appointment of counsel under 28 U.S.C. § 1915(e)(1) is within "the sound discretion of the trial court and is granted only in exceptional circumstances." *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (noting that only "exceptional circumstances" support such a discretionary appointment). Exceptional circumstances exist where there is cumulative showing of both a likelihood of success on the merits and an inability of the pro se litigant to articulate his claims in light of their legal complexity. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). Because it appears Plaintiff is capable of legibly articulating the facts and circumstances relevant to his claims,

1  which are not exceptionally legally complex, and because Plaintiff has yet to show he is

2  likely to succeed on the merits of the claims, the Court **DENIES** Plaintiff's motion for

3  appointment of counsel at this time without prejudice to its renewal at a later stage of these

4  proceedings.

5  **IV.    Conclusion and Orders**

6       Good cause appearing, the Court:

7       1.     **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a).

8  ECF No. 2.

9       2.     **ORDERS** the Secretary of the CDCR, or his designee, to collect from

10  Plaintiff's prison trust account the $78.41 initial filing fee as well as the remaining $271.59

11  balance of the $350 filing fee owed in this case by collecting monthly payments from the

12  account in an amount equal to twenty percent (20%) of the preceding month's income and

13  forward payments to the Clerk of the Court each time the amount in the account exceeds

14  $10 in accordance with 28 U.S.C. § 1915(b)(2).

15      3.     **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail

16  on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-

17  0001, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

18      4.     **DENIES** Plaintiff's Motion to Appoint Counsel without prejudice. ECF

19  No. 3.

20      5.     **DISMISSES** all claims in Plaintiff's Complaint against all Defendants

21  without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) with the exception of

22  the Eighth Amendment excessive force claim against Defendants Rodriguez and Nelson

23  and the First Amendment retaliation claim against Defendant Rodriguez.

24      6.     **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in

25  which to either (1) notify the Court of his intention to proceed with his First and Eighth

26  Amendment claims against Defendants Rodriguez and Nelson only; or (2) file a First

27  Amended Complaint that cures the deficiencies of pleading noted in this Order. Plaintiff's

28  First Amended Complaint must be complete by itself without reference to any previous

23cv253-LL-AHG

1  version of his Complaint. Any Defendants not re-named and any claims not re-alleged in

2  the First Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal*

3  *Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989)

4  ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d

5  896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not

6  re-alleged in an amended pleading may be "considered waived if not repled.").

7  **IT IS SO ORDERED**.

8  Dated:  February 27, 2023

9

10  Honorable Linda Lopez
   United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28